RALPH E. WISER, OSB No. 814232
Attorney at Law
One Centerpointe Drive, Suite 570
Lake Oswego, Oregon 97035
Telephone: (503) 620-5577
Fax: (503) 670-7683
ralph@wiserlaw.com

RODERICK BOUTIN, OSB No. 82199
Boutin & Associates, PC
5005 Meadows Road, Suite 405
Lake Oswego, Oregon 97035
Telephone: (503) 601-6800
Fax: (503) 598-9593
rodboutin@comcast.net

Attorneys for Plaintiff Linda Mallery McLean

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LINDA MALLERY MCLEAN,<br><br>Plaintiff,<br><br>v.<br><br>PINE EAGLE SCHOOL DISTRICT, NO. 61, JOHN MINARICH, MARK BUTLER, KRISTA DENNIS, WILLIAM "BILL" JOHNSON, DAVID SCHMITT, DWIGHT SAUNDERS, ROBERT SEAL, MICHAEL "MIKE" CORLEY, CAMMIE DECASTRO, AND SHAWN THATCHER, in their individual and official capacities, and ALPINE ALARM COMMUNICATIONS AND CONSTRUCTION, LLC, an Oregon Limited Liability Company,<br><br>Defendants. | Case Number: 3:15-cv-654<br><br>COMPLAINT<br>(42 U.S.C. § 1983, and ancillary state law claims)<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Linda Mallery McLean, through her attorneys, Ralph E. Wiser and Roderick Boutin, submits her Complaint and Demand for Jury Trial against Defendants, as follows:

Page 1 –COMPLAINT

## I. INTRODUCTION

1. On April 26, 2013, elementary school teacher Linda Mallery McLean ("McLean"), was assaulted by a man with a gun while at work at Defendant Pine Eagle School District 61 ("District") in Halfway, Oregon. The gunman pointed the gun at Ms. McLean's face and pulled the trigger. In the instant before the gunman pulled the trigger, Ms. McLean recognized the gunman as the school district's safety officer, Shawn Thatcher ("Thatcher"). This simulated murder was part of an "active shooter drill" that Defendants had collectively coordinated and carried out. Defendants intentionally failed to disclose to Pine Eagle School District 61 employees, including Ms. McLean, that the gunmen in the school on April 26, 2013, were actually the school safety officer Thatcher and District Board Chair, John Minarich, and that the simulated mass murders carried out by Thatcher and Minarich was merely a drill. Ms. McLean has suffered and continues to suffer significant damages, including severe mental and emotional distress, and loss of her career as a teacher, as a result of Defendants' actions, which constitute intentional, willfull and wanton violation of her rights under the United States Constitution and the State of Oregon.

## II. JURISDICTION AND VENUE

2. This action arises under the Constitution and the laws of the United States and the State of Oregon, and is authorized pursuant to 42 U.S.C. § 1983 and the common law of the State of Oregon.

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and § 1367. This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. § 1988.

4. Venue is proper in the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1391. All of the events alleged herein occurred within the State of Oregon, and all of the parties were residents of the State or operating as a business within the

state at the time of the events giving rise to this Complaint.

5. All procedural prerequisites for the filing of this action have been met. Plaintiff filed a timely Notice of Tort Claims with the proper parties pursuant to Oregon's Tort Claims Act, ORS 30.275 to preserve Plaintiff's claims arising under Oregon's common law.

## III. PARTIES

**Plaintiff**

6. Plaintiff McLean is and was an Oregon resident and domiciled in the State of Oregon at all relevant times, including during the time of the events described in this Complaint. At all material times, McLean was licensed as an elementary school teacher by the Oregon Teacher Standards and Practices Commission.

**Defendants**

7. Defendant Pine Eagle School District 61 is and was at all relevant times duly organized and operating as a public charter school within the meaning of ORS 338.005, et seq., in the State of Oregon, and subject to federal and state law. At all material times Defendant Pine Eagle School District 61 was acting under color of state law.

8. Defendant Pine Eagle School District 61, is and was at all relevant times operated by a governing body comprised of a duly elected school board. Defendants John Minarich, Mark Butler, Krista Dennis, William "Bill" Johnson, David Schmitt, Dwight Saunders, and Robert Seal were and are at all relevant time members of the school board. Defendant Minarich is and was at all material times the Chair of the Pine Eagle School District 61 school board. At all material times, Defendant school board members were acting under color of state law. Defendant school board members are sued in their individual and official capacities.

9. Defendant Michael "Mike" Corley is and was at all material times, licensed as an administrator and issued a conditional permit as a Superintendent, and acting as an agent, on behalf of, and within his employment as the Superintendent of the Pine Eagle School District 61. At all material times, Defendant Corley was acting under color of state law. Defendant Corley is

1  sued in his individual and official capacities.

2      10.    Defendant Cammie DeCastro is and was at all material times, licensed as an administrator by the Oregon Teacher Standards and Practices Commission, and employed by the Pine Eagle School District 61 as the Principal of the school district's high school and elementary school. At all material times, Defendant DeCastro was acting under color of state law. Defendant DeCastro is sued in her individual and official capacities.

    11.    Defendant Shawn Thatcher is and was at all material times employed by the Pine Eagle School District 61 as the district safety officer and maintenance person. At all material times, Defendant Thatcher was acting under color of state law. Defendant Thatcher is sued in his individual and official capacities.

    12.    Defendant Alpine Alarm Communications and Construction, LLC, ("Alpine Alarm") is and was at all material times an Oregon limited liability company. At all material times, Defendant John Minarich was the owner, principal in and President of Alpine Alarm, and was acting as an agent of, within the course and scope of his employment by, and in furtherance of the economic enterprise of Alpine Alarm. Alpine Alarm markets, sells, constructs, installs and maintains security systems. Upon information and belief, Alpine Alarm has sold security systems to Defendant Pine Eagle School District 61, and to other public bodies and businesses in Oregon. Defendant Minarich is sued in his individual and official capacities.

## IV. GENERAL ALLEGATIONS

    13.    Plaintiff Linda Mallery McLean was hired by Defendant Pine Eagle School District in 1982. At all material times, Plaintiff McLean was employed by the school district as a Title I, elementary school teacher. The district classroom assigned to Ms. McLean was in the district elementary school, just to the left of the main entry into the school building. The only door to the classroom was off the main hall. The classroom had no windows. There was no means of escape from the classroom except through the classroom door.

    14.    As an elementary teacher, Ms. McLean taught third and fourth grade science and

1  social studies, reading and math for extra assistance, and some times provided assistance to high
2  school students with their academics.

3      15.    On April 26, 2013, a teacher in-service day, Ms. McLean arrived at school at 7:30
4  a.m. Ms. McLean spent the morning reviewing student writing samples and grading them, so as
5  to assess student progress. Ms. McLean met with other teachers to put the information into the
6  computer.

7      16.    Cammie DeCastro spoke to the teaching staff present about parent-teacher
8  conferences, end of the school year matters, before noon. Ms. McLean had a lunch break and
9  returned to the school library about 1:00 p.m.

10      17.    Ms. McLean went to her classroom to continue working. She was sitting at her
11  desk when she heard a commotion outside, which she initially believed to be the clatter of a
12  falling ladder. Ms. McLean then heard running in the hallway and banging noises. She became
13  curious and confused.

14      18.    All of a sudden, a man dressed all in black with a hoodie and goggles burst
15  through the classroom door into the classroom. Ms. McLean was disoriented and her heart
16  started racing. The man walked toward Ms. McLean, pointing a gun at Ms. McLean's face. Ms.
17  McLean could not move, as she sat terrified in her chair. Ms. McLean recognized the gunman as
18  the school safety officer, Shawn Thatcher, an instant before he pulled the trigger. Smoke filled
19  the room. Thatcher told Ms. McLean that she was dead.

20      19.    Thatcher left the room. He and John Minarich, who was also dressed in
21  camoflauge, and brandishing a weapon, continued going into and out of rooms, pointing their
22  weapons at other teachers, pulling the trigger of the gun, and stating that the the teachers were
23  dead. Panic ensued. A teacher wet her pants. A teacher tried to keep Minarich from entering
24  his room and scuffled with Minarich, injuring the teachers's arm. Some teachers fell down trying
25  to hide or escape from Minarich or Thatcher.

26      20.    Ms. McLean could not figure out what was going on. She felt very confused. Her

Page 5 –COMPLAINT

heart was racing. She walked out of the classroom and saw a pistol lying on the ground. She thought about her grandbabies. She wondered if she was really shot and was going to die. At first Ms. McLean felt she was okay if she was going to die. Then she thought about her daughter, who was pregnant, and became angry that she would not be able to help with the new baby. She looked at the pistol and wondered if she was supposed to pick it up and shoot someone.

21. After the shooting, running, falling and turmoil stopped, the teachers gathered for a few minutes in the school library. Ms. McLean was concerned that two teachers were missing. Teachers were angry and confused. Minarich and Thatcher then lectured the teachers on different stages of the simulated mass murder. Scott Immoos, a deputy employed by the Baker County Sheriff's Department attended the meeting in the library with a police dog in tow. Teachers questioned Minarich, DeCastro and Thatcher about their disregard for the teacher's safety.

22. Ms. McLean left the meeting in the library and immediately went home. She was distraught and disbelieving that the school would engage in such a terrorizing assault. Ms. McLean was extremely shaken, confused and mentally, physically and emotionally ill. She could not shake the event but continued to relive it and try to make sense of it, but could not. Ms. McLean could not sleep, and remained anxious and vigilant. When she drifted off to sleep, she experienced nightmares and sweating.

23. Ms. McLean returned to school the following Monday, but each time she thought about the event she because extremely emotionally and physically ill. Her physicians, including her psychologist, diagnosed her with Post Traumatic Syndrome Disorder, and she has undergone therapies and has taken medication for treatment of PTSD. On the advice of her treating psychologist, Ms. McLean tried to return to the school building, as part of a desensitization therapy. However, when she returned she was short of breath, anxious, emotionally distressed, and had to leave. She has not returned to the school building since.

24. Ms. McLean lives in a small, rural community in eastern Oregon, population 288.

Page 6 –COMPLAINT

1   Virtually every time she leaves her house, she encounters someone or something that reminds her
2   of the terror of April 26, 2013. Those individuals that she encounters who are responsible for the
3   events, either shun her or, on occasion, act hostilely toward her. The town is mindful that the
4   school district is one of the better employers in the community, and many townspeople
5   disapprove of the events of April 26, 2013, on the one hand, and of Ms. McLean's efforts to hold
6   Defendants responsible for their unlawful conduct, on the other, causing Ms. McLean further
7   emotional distress.

8       25.    Prior to the "active shooter drill," members of Pine Eagle School District 61's so-
9   called Safety Committee planned to execute this drill without the knowledge of Ms. McLean and
10  other teacher employees and notified the Baker County Sheriff's Office and Dispatch Center that
11  it would be occurring so they would not respond to the event if they received a 911 call.
12  DeCastro advised the victim teachers that the district had caused the Baker County Sheriff's
13  Office to conduct a "concealed handgun" permit check in advance of the drill to determine if any
14  teachers had obtained and could use such a permit so as to expose the assailants to harm by
15  fighting back during the drill. Defendant school board members, Superintendent Corley and the
16  other Defendants knew or should have known that the drill was going to occur and acted with
17  one another by agreement and concerted action. Defendants DeCastro, Minarich and Thatcher
18  actively participated and carried out the drill on April 26, 2013, as described above.

19      26.    At all relevant time periods all Defendants were acting under color of state law.

20      27.    All Defendants willfully participated in joint actions in order to deprive Ms.
21  McLean of her civil, federally protected constitutional rights.

22      28.    Defendant Board members and Defendant Corley acted as the policy makers and
23  agents of Defendant Pine Eagle School School District 61, and agreed that this was the type of
24  drill that the school district would conduct as part of its custom, policy, and/or practice.
25  Defendant DeCastro participated as a policy maker in the drill by virtue of her position on the
26  Safety Committee, as the lead administrator in school building, or as a defacto policy maker in

Page 7 –COMPLAINT

the school district.

29. All Defendants conspired with each other to violate the constitutional rights of Ms. McLean and accordingly, all are liable for those constitutional deprivations.

30. All Defendants intentionally withheld information relating to the conduct of the "active shooter drill from its teacher staff, including Ms. McLean.

31. Defendant John Minarich actively planned and actively participated in the active shooter drill as the school board Chair, and as the President of Alpine Alarm. During Defendant Minarich's planning and/or actively participating in the active shooter drill, he was acting as the agent of, within the course and scope of his employment by, or in furtherance of the economic enterprise of Alpine Alarm.

32. Ms. McLean has and continues to experience economic damages, humiliation, severe emotional distress, loss of enjoyment of life, and other significant and severe injuries, damages and losses as a direct and proximate result of Defendant's actions.

33. Defendants deliberately intended to cause Ms. McLean's injuries, and acted directly to bring about her injuries.

34. There is nothing about the nature of Ms. McLean's employment by Pine Eagle School District 61 that either allows or requires Defendants to intentionally terrorize and place school district employees such as Ms. McLean in fear for their lives under the threat of deadly force.

35. Ms. McLean's job duties as a teacher at Pine Eagle School District 61 did not place her at any greater risk of injury from a terrorist attack than the risk of injury from a terrorist attack to which the general public is exposed.

36. Had Defendants not conspired to execute and actually executed the "active shooter" drill at Pine Eagle School District 61 on April 26, 2013, Ms. McLean would not have suffered the injuries and damages complained of in this Complaint

37. Defendants' conduct in arranging for Ms. McLean to be assaulted and terrorized

by a man armed with a gun lies well outside the scope of Ms. McLean's employment with Pine Eagle School District 61.

38. Defendants' conduct caused Ms. McLean to incur reasonable and necessary medical and psychological treatment and expenses for which she is entitled to recover, in an amount to be determined at trial.

39. Defendants' conduct caused Ms. McLean severe emotional distress, including but not limited to immediate upset, anxiety, disorientation, sleeplessness, nightmare, and post traumatic disorder, loss of enjoyment of life, and inconvenience, all to her non-economic damages in an amount to be determined at trial.

40. Pursuant to Ms. McLean's claims for constitutional deprivations brought under 42 U.S.C. § 1983, she is entitled to an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

41. Plaintiff is entitled to punitive damages pursuant to all claims brought pursuant to 42 U.S.C. § 1983, and her ancillary state law tort claims. Plaintiff will seek leave to amend the Complaint to further allege her right to punitive damages. Punitive damages will be in an amount to be determined at trial.

## V. CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Fourteenth Amendment Violation –
### SUBSTANTIVE DUE PROCESS VIOLATION – STATE CREATED DANGER/ FAILURE TO PROTECT
### (Against all Defendants)

42. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

43. At all relevant times, Defendants were acting under color of state law in their actions and inactions.

44. Ms. McLean had a protected liberty interest in freedom from assault and terror sponsored and created by Pine Eagle School District 61 and the other defendants while she was at work on April 26, 2013, when Defendants Thatcher and Minarich, acting as terrorists simulating

mass murders, attacked and terrorized the teaching staff in the school district, including but not limited to Defendant Thatcher's simulated murder of Ms. McLean. By these actions, all Defendants shared the common objective of depriving Ms. McLean of her Fourteenth Amendment rights under the United States Constitution.

45. Because Defendants created this danger, they had a corresponding duty to protect Ms. McLean from harm, including from the deprivation of her protected liberty interests in freedom from the unreasonable attack and terror created by Pine Eagle School District 61 and the other defendants, including but not limited to Defendant Thatcher's simulated murder of Ms. McLean.

46. Defendants failed to protect Ms. McLean from the deprivations of her constitutionally protected rights during the "active shooter drill" at Pine Eagle School District 61 on April 26, 2013.

47. Defendants' actions were arbitrary and so outrageous as to shock the conscience, offend traditional notions of fairness, and were offensive to human dignity in violation of the due process clause of the Fourteenth Amendment.

48. Defendants' failure to protect Ms. McLean during the "active shooter drill", as more fully described herein, implemented the official policy, practice and/or custom of Defendant Pine Eagle School District 61.

49. The acts or omissions of Defendants were the moving force behind Defendants' failure to protect Ms. McLean in violation of her Fourteenth Amendment substantive due process rights.

50. The acts or omissions of Defendants were the legal and proximate cause of Ms. McLean's damages. Defendants were aware of and acquiesced in a pattern of constitutional violations, had actual and/or constructive knowledge that their actions were substantially certain to result in the constitutional violations, and consciously and deliberately chose to disregard the risk of harm.

51. Defendants' conduct violated Ms. McLean's clearly established constitutional rights of which a reasonable person knew or should have known.

52. Each Defendant knowingly, intentionally, willfully and wantonly engaged in overt acts in furtherance of their conspiracy to deprive Ms. McLean of her Fourteenth Amendment rights under the United States Constitution, as more fully described herein.

53. Ms. McLean has been and continues to be damaged by Defendants' failure to protect her in violation of Fourteenth Amendment substantive due process rights, including but not limited to severe mental and emotional distress.

## SECOND CLAIM FOR RELIEF
## 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT VIOLATION
## FAILURE TO TRAIN OR SUPERVISE
### (Against all Defendants)

54. Plaintiff incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

55. At all relevant times, Defendants were acting under color of state law in their actions and inactions.

56. Defendant then Board Chair Minarich and the other school board Defendants are the final policymakers for Pine Eagle School District 61. Defendant Superintendent Corley, and Principal DeCastro participated in the making and executing of school board policies, including the policies and decisions of the school Safety Committee and/or those involved in the "active shooter drill."

57. In that capacity, Defendants establish policies, procedures, customs and/or practices regarding the conduct of those who carry them out, and are responsible for the training and supervision of those who carry them out, including those who carried out the "active shooter drill."

58. The policies, procedures, customs and/or practices developed and maintained by Defendants regarding the "active shooter drill" exhibit a reckless, deliberate, or calculated indifference to the constitutional rights of Ms. McLean and other teachers who were the object

Page 11 –COMPLAINT

1  and victims of the "active shooter drill" which occurred in the Pine Eagle School District 61 on
2  April 26, 2013.

3　　　　59.　　Defendants knew or should have known that such policies, procedures, customs, and/or practices were motivated by recklessness or deliberate or calculated indifference such that they were likely to cause harm to Ms. McLean, which violated Ms. McLean's constitutional rights, including her right to due process pursuant to the Fourteenth Amendment.

　　　　60.　　Defendants knew or should have known that the lack of adequate training and supervision provided to Defendants DeCastro, Thatcher and Minarich concerning the proper methods of conducting an "active shooter drill" was reckless, unnecesarily dangerous, and/or done with calculated and deliberate indifference to the rights of persons with whom its officers would inevitably come into contact with during the course of the drill, including Ms. McLean.

　　　　61.　　Defendants had a duty to protect the constitutional rights of the persons with whom DeCastro, Minarich and Thatcher would come into contact during the "active shooter drill," including Ms. McLean, from violation of those rights by DeCastro, Minarich and Thatcher.

　　　　62.　　By failing to properly train and/or supervise DeCastro, Minarich and Thatcher, Defendants violated Ms. McLean's constitutional rights.

　　　　63.　　The direct result of Defendants failure to properly train and supervise DeCastro, Minarich and Thatcher was the violation of Ms. McLean's constitutionally protected rights as described herein.

　　　　64.　　Ms. McLean has been and continues to be damaged by Defendants failure to train and supervise, including but not limited to severe mental and emotional distress.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATION
### FALSE IMPRISONMENT
### (Against All Defendants)

　　　　65.　　Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

Page 12 –COMPLAINT

66. At all relevant times, Defendants were acting under color of state law in their actions and inactions.

67. Ms. McLean had a legitimate and reasonable expectation of privacy in her person for which the Fourth Amendment protects her from unreasonable governmental seizures of her person.

68. Defendants, acting jointly and in concert with one another, restricted Ms. McLean's freedom of movement by attacking and terrorizing Ms. McLean under the threat of deadly force such that she reasonably believed that she was not free to leave or escape when Defendant Thatcher pointed his gun at her face, pulled the trigger, and told her that she was dead. In doing so, Defendants shared the common objective of depriving Ms. McLean of her Fourth Amendment rights under the United States Constitution, as more fully described herein.

69. Due to such actions, Ms. McLean's freedom of movement was severely restricted and a reasonable person under the circumstances would have understood that she was not free to leave.

70. Defendants' actions, as described above, were objectively unreasonable in light of the facts and circumstances confronting them.

71. No Defendant had probable cause to believe that Ms. McLean had committed or was committing a crime.

72. No legally recognizable exigent circumstances existed which would have justified or permitted Defendants' conduct.

73. Defendants' false imprisonment of Ms. McLean implemented the official policy, practice and/or custom of Defendants.

74. The acts or omissions of Defendants were the moving force behind the false imprisonment of Ms. McLean.

75. The acts or omissions of Defendants were the legal and proximate cause of Ms. McLean's damages. Defendants were aware of and acquiesced in a pattern of constitutional

violations, had actual and/or constructive knowledge that their actions were substantially certain to result in the constitutional violations, and consciously and deliberately chose to disregard the risk of harm.

76. Defendants conduct was motivated by evil motive or intent or was engaged in with reckless or callous indifference to Ms. McLean's constitutionally protected rights.

77. Defendants' conduct violated Ms. McLean's clearly established constitutional rights of which a reasonable person knew or should have known.

78. Each Defendant knowingly, intentionally, willfully and wantonly engaged in overt acts in furtherance of the conspiracy to violate Ms. McLean's Fourth Amendment rights under the United States Constitution, as more fully described herein.

79. As a result of Defendants' common objective to violate Ms. McLean's constitutionally protected rights, Ms. McLean suffered actual deprivations of her Fourth Amendment rights, as more fully described herein.

80. Ms. McLean has been and continues to be damaged by Defendants' false imprisonment of her, including but not limited to severe mental and emotional distress.

**FOURTH CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – FOURTEENTH AMENDMENT VIOLATION**
**PROCEDURAL DUE PROCESS VIOLATION –DEPRIVATION OF A LIBERTY INTEREST WITHOUT DUE PROCESS**
**(Against all Defendants)**

81. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

82. At all relevant times, Defendants were acting under color of state law in their actions and inactions.

83. Ms. McLean had a protected liberty interest in freedom from the unreasonable and forcible seizure of her person, including but not limited to such seizure by means of excessive force, the restriction of her freedom of movement without her consent, and from the violation of

Page 14 –COMPLAINT

her individual dignity and her sense of security.

84. Defendants, acting jointly or in concert with one another, forcibly seized Ms. McLean's person, including by way of excessive force, and restricted her freedom of movement when Thatcher burst through Ms. McLean's classroom door, walked toward her, pointing his gun at her face, pulled the trigger, and told her she was dead. In doing so, all Defendants shared the common objective of depriving Ms. McLean of her Fourteenth Amendment rights under the United States Constitution, as more fully described herein.

85. Defendants' actions were taken without any procedural safeguards.

86. Defendants actions were sanctioned and authorized by the custom, policy and/or practice of Pine Eagle School District 61.

87. Ms. McLean was afforded no due process prior to, during, or after her forcible detention on April 26, 2013.

88. Providing due process to Ms. McLean in advance of the deprivation of her constitutionally protected rights was possible, practicable, and constitutionally required.

89. Under the circumstances described herein, the deprivation of Ms. McLean's procedural due process rights was foreseeable.

90. Defendants' actions deprived Ms. McLean of her protected liberty interests, including but not limited to her sense of security and her individual dignity.

91. No exigent circumstances existed that would have justified Defendants' denial of all due process to Ms. McLean

92. Defendants' denial of all due process to Ms. McLean in advance of the "active shooter" drill implemented the official policy, practice and/or custom of Pine Eagle School District 61.

93. The acts or omissions of Defendants were the moving force behind Defendants' denial of all due process rights to Ms. McLean in violation of her Fourteenth Amendment rights.

94. The acts or omissions of Defendants were the legal and proximate cause of Ms.

Page 15 –COMPLAINT

McLean's damages. Defendants were aware of and acquiesced in a pattern of constitutional violations, had actual or constructive knowledge that their actions were substantially certain to result in the constitutional violations, and consciously and deliberately chose to disregard the risk of harm.

95. Defendants' conduct was motivated by evil motive or intent or was engaged in with reckless or callous indifference to Ms. McLean's constitutionally protected rights.

96. Defendants' conduct violated Ms. McLean's clearly established constitutional rights of which a reasonable person knew or should have known.

97. Each Defendant knowingly, intentionally, willfully and wantonly engaged in overt acts in furtherance of the conspiracy to deprive Ms. McLean of her constitutionally protected rights, as more fully described herein.

98. As a result of Defendants' common objective to violate Ms. McLean's constitutionally protected rights, Ms. McLean suffered actual deprivations of her Fourteenth Amendment rights, as more fully described herein.

99. Ms. McLean has been and continues to be damaged by Defendants' denial of procedural due process to her, including but not limited to severe mental and emotional distress.

### FIFTH CLAIM FOR RELIEF
### STATE LAW CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants in their individual capacities)

100. Plaintiff incorporates by reference all paragraphs in this Complaint as though fully set forth herein.

101. Defendants knew or should have known that by secretly staging the "active shooter" drill, they would cause Ms. McLean severe emotional distress.

102. At all material times, DeCastro, Minarich and Thatcher were acting individually and/or as agents of Pine Eagle School District 61. Defendant Minarich was acting further as the agent of, within the course and scope of employment by, and in furtherance of the economic

enterprise of Alpine Alarm.

103. Defendants' conduct in authorizing and carrying out the secret "active shooter" drill was beyond the bounds of socially tolerable conduct, was outrageous, shocked the conscience of reasonable persons, and exceeded the bounds of decency to such a degree as to be utterly intolerable in a civilized community.

104. Defendants' conduct caused Ms. McLean severe emotional distress, including but not limited to immediate upset, anxiety, disorientation, sleeplessness, nightmare, and post traumatic stress disorder.

105. Defendants' conduct caused Ms. McLean to involuntarily separate from her employment by Pine Eagle School District 61, resulting in lost wages, lost retirement contributions, lost insurance coverage, and loss of other fringe benefits and advantages of employment.

106. Defendants' conduct caused Ms. McLean to incur medical, psychologic therapy, and other expenses reasonable and necessary to treat her severe mental and emotional distress.

107. Defendant Alpine Alarm is directly or vicariously liable for the acts of Defendant Minarich in causing Ms. McLean's severe mental and emotional distress.

108. Ms. McLean has been and continues to be damaged by Defendants' conduct in intentionally inflicting severe mental and emotional distress.

109. The acts or omissions of each Defendant were the legal and proximate cause of Ms. McLean's damages.

110. The acts or mission of each Defendant showed a wanton disregard, and reckless and callous indifference to Ms. McLean's health, safety, and welfare such that Ms. McLean is entitled to an award of punitive damages.

### SIXTH CLAIM FOR RELIEF
### STATE LAW CLAIM FOR CIVIL ASSAULT
(Against all Defendants in their
Individual capacities)

111. Plaintiff incorporates by reference all paragraphs of this Complaint as though

fully set forth herein.

112. At all material times, Defendants DeCastro, Minarich and Thatcher were acting individually and/or as agents of Pine Eagle School District 61.

113. Defendants intended to cause Ms. McLean offensive or harmful contact with her person and/or to put her in apprehension of such offensive or harmful contact with her person when Thatcher burst through Ms. McLean's classroom door, walked toward her, pointing his gun at her face, and pulling the trigger to simulate her murder.

114. By these actions, Defendants placed Ms. McLean in apprehension of immediate physical contact that appeared to be and that was harmful and/or offensive.

115. Defendant Alpine Alarm is directly or vicariously liable for the acts of Minarich in causing Ms. McLean to be placed in apprehension of immediate physical contact that appeared to be and that was harmful and/or offensive.

116. The acts or omissions of each Defendant were the legal and proximate cause of Ms. McLean's damages.

117. Ms. McLean has been and continues to be damaged by Defendants' assault of her, including but not limited to severe mental and emotional distress.

118. The acts or mission of each Defendant showed a wanton disregard, and reckless and callous indifference to Ms. McLean's health, safety, and welfare such that Ms. McLean is entitled to an award of punitive damages.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against all Defendants, and award the following relief to the fullest extent allowed by law:

    a. Actual economic damages, including but not limited to those for Ms. McLean's involuntary separation from employment, medical and psychological treatment expenses, loss of retirement contributions, fringe benefits, and other economic advantages of employment, as established at trial;

    b. Non-economic damages, including but not limited to those for emotional pain,

suffereing, mental anguish, inconvenience, and loss of enjoyment of life, as established at trial;

    c.    Punitive damages for all claims as allowed by law;

    d.    Pre-judgment and post-judgment interest at the highest lawful rate;

    e.    Attorneys' fees and costs;

    f.    Any such further relief as justice allows.

Plaintiff demands a Jury Trial on all issues so triable.

Dated this *17* day of April, 2015.

                                    Respectfully submitted,

                                    /s/ *[signature]*
                                    Ralph E. Wiser, OSB No. 814232

                                  /s/ *RB by RW*
                                    Roderick Boutin, OSB No. 821998

                                    Attorneys for Plaintiff